IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DERRICK M. LLOYD, #11A2684, | ) | |
| a.k.a., Rashad A. Hamid, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09-CV-827-TMH |
| | ) | [WO] |
| | ) | |
| TROY KING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Derrick M. Lloyd ["Lloyd"], an inmate currently incarcerated in the State of New York, challenging actions relative to his confinement in the Elmore County Jail from October 21, 2008 until December 3, 2008.  Specifically, Lloyd, who identifies himself as a Muslim, complains jail personnel failed to provide him a non-pork diet and denied him access to religious services conducted by an Islamic chaplain.  Lloyd also attacks the constitutionality of his incarceration in the Elmore County Jail.  In support of this latter claim, Lloyd argues his imprisonment pursuant to warrants issued by the State of New York was invalid.  Finally, Lloyd alleges his extradition to New York violated his due process rights as such occurred absent an extradition hearing and without proper authorization from the Governor of New

York.  Lloyd names Troy King, the Attorney General for the State of Alabama at the time of filing the complaint, Ben Franklin, the Sheriff of Elmore County, Alabama, Sgt. Joe Fox, administrator of the Elmore County Jail, and Jane Roberts, the jail's warden, as defendants in this cause of action.[1]  Lloyd seeks injunctive relief for his religious deprivation claims. *Complaint (Doc. No. 1)* at 5 ("Order[] the institution to make religious accommodations for Islamic religious needs . . . .  Dietary needs & Islamic chaplains.").  Lloyd seeks compensatory and punitive damages for the alleged violations of his constitutional rights regarding his confinement in the Elmore County Jail and his extradition to New York.  *Id.* ("Monetary, punitive and compensatory damages . . .  2 million due to illegal false imprisonment . . .  and Due Process violation [for extradition to New York absent a hearing or requisite authorization].  Mental & emotional stress.  Destruction of family ties, employment & financial burdens [resulting from the extradition].").

The defendants filed special reports and supporting evidentiary materials addressing Lloyd's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the defendants' reports as motions for summary judgment. *December 1, 2009 Order (Doc. No. 24)*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motions

---

[1] The defendants advise that the true name of the defendant identified as Joe Fox is actually Jeff Fox.

for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive the defendants' properly supported motions for summary judgment, Lloyd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are

4

likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law

5

applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

6

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Lloyd fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

#### A. Relevant Facts

The New York Board of Parole released Lloyd on parole in June of 1990. If Lloyd did not violate the requisite conditions of his parole, his parole term would expire on October 20, 1996. *County Defendant's Special Report Exhibit D  (Doc. No. 23-4)* at 9. As a condition of parole, Lloyd waived extradition to the State of New York with respect to any violation of his parole. *Id*. at ¶10 (emphasis added) ("***In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union*** and from any territory or country outside the United States. ***This waiver shall be in full force and effect until I am discharged from Parole***. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and ***I freely and knowingly waive this right as a condition of my Parole*** . . . .").

On January 22, 1991, the New York Board of Parole issued a parole violation warrant

7

against Lloyd due to his violation of the conditions governing his parole. *Id.* at 8. On February 21, 1992, the Criminal Court of the City of New York issued an arrest warrant for Lloyd based on the filing of an accusatory instrument in that court charging Lloyd with second degree murder for a murder which occurred in 1991. *Id*. at 12-14. The issuance of these warrants occurred prior to Lloyd's discharge from parole. Thus, Lloyd never received a discharge from parole and his waiver of extradition applied to any extradition sought by the State of New York with respect to such warrants.

> On October 22, 2007, a grand jury convened by this court issued indictments against Lloyd for misuse of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B) and possession of a fraudulent Social Security Card in violation of 18 U.S.C. § 1028(a)(6). A jury trial was held before this court on May 6, 2008. After hearing evidence on these charges, the jury returned guilty verdicts against Lloyd for the offenses charged in counts one and two of the indictment. On July 22, 2008, this court sentenced Lloyd to concurrent sentences of six months imprisonment for his federal convictions and likewise ordered the federal sentences "to be served concurrently . . . with any sentence that may be imposed by the Circuit Court of Montgomery County, Alabama for the same offense."
>
> On December 7, 2007, a grand jury for Montgomery County issued a two-count indictment against Lloyd for possession of a forged instrument in violation of *Ala. Code* § 13A-9-6(a) and resisting arrest in violation of *Ala. Code* § 13A-10-41(a). On October 20, 2008, the State nol prossed the possession of a forged instrument charge as Lloyd had previously been convicted for a corresponding federal offense. This same day, the Circuit Court of Montgomery County conducted a bench trial on the resisting arrest charge and found Lloyd guilty of this offense. The court sentenced Lloyd to twelve months imprisonment in the Montgomery County Detention Facility and awarded him jail credit for time served in federal custody.

8

*Lloyd v. Marshall, et al.*, Civil Action No. 2:08-CV-419-MEF-WC (M.D. Ala. 2012) - *Recommendation of the Magistrate Judge (Doc. No. 90)* at 12-13 (footnotes and citations to record omitted), adopted as opinion of the court by April 19, 2012 Order (Doc. No. 91).

Upon completion of the sentences imposed by the state and federal courts relative to the above described convictions, Deputy United States Marshals transported Lloyd to the Elmore County Jail on October 21, 2008 for incarceration pending his extradition to the State of New York on the parole violation and arrest warrants issued against him by the New York Board of Parole and the Criminal Court of New York City in 1991 and 1992, respectively. The marshals provided officials at the Elmore County Jail with copies of the waiver of extradition, parole violation warrant and arrest warrant. On December 3, 2008, Lloyd was extradited to the State of New York where he remains incarcerated on a life sentence imposed for a conviction of second degree murder.

During his confinement at the Elmore County Jail, jail personnel allowed Lloyd to receive religious materials from outside sources, attend religious services performed at the jail and freely practice his religion so long as his actions did not jeopardize the security of the jail. *County Defendant's Discovery Response Exhibit D (Doc. No. 32-2)* at 29. If the religious services provided at the jail did not comport to his particular religion, Lloyd retained the ability to seek assistance from a religious leader of his choice who could visit him at the jail upon an appropriate request and requisite approval. *Id*. at 30. At the time of Lloyd's incarceration, the Elmore County Jail did not provide a pork-free diet and Lloyd

initially accepted the meals served to him.[3]   After a few days in the jail, however, Lloyd filed

an inmate request form regarding the lack of "a non-pork diet" and seeking provision of such

diet "due to [his] religious dietary practice."  *County Defendant's Special Report Exhibit E*

*(Doc. No. 23-5) at 2*.  Defendant Fox responded to this request on October 27, 2008 advising

Lloyd that because he previously deviated from his "religious eating . . . no effort will be

made to leave off pork."  *Id*.  On October 23, 2008, Lloyd completed a request form seeking

"a hearing for extradition . . . or immediate release after 72 hours . . . ."  *Plaintiff's January*

*20, 2010 Response Exhibit A (Doc. No. 33-1) at 3*.   Defendant Roberts immediately

responded to this request advising Lloyd he was "a federal inmate being held in [the] jail"

on orders of the United States Marshal.  *Id*.  On October 26, 2008, Lloyd submitted another

inmate request form challenging the legality of his custody in the Elmore County Jail.

*County Defendant's Special Report Exhibit E (Doc. No. 23-5) at 3* ("[M]y custody in this jail

via the US Marshals is illegal [as the warrants are invalid].").  The following day, defendant

Roberts responded to this grievance and advised Lloyd she had provided a previous letter

submitted to her regarding his incarceration to the United States Marshal for review and

response.  *Id*.  After entering the respective responses, the defendants provided Lloyd notice

of each response.  Lloyd filed a request form designated as a grievance in the latter part of

November 2008 addressing general conditions of the jail and his religious dietary request.

*Plaintiff's January 20, 2010 Response Exhibit A (Doc. No. 33-1) at 2*.  Defendant Fox

---

[3] Effective February 4, 2009, the Elmore County Jail implemented a pork-free meal plan for all
inmates.  *County Defendant's Special Report Exhibit A  (Doc. No. 23-1- Affidavit of Jeff Fox) at 4*.

responded to this grievance on November 25, 2008.  *Id.*  Lloyd did not appeal Fox's response to this grievance.  On November 21, 2008, Lloyd submitted a request form seeking a phone number for the law firm representing the jail in an effort to discuss his dietary concerns with counsel per instruction by defendant Fox.  *Id.* at 5.  With the exception of the second document addressing his religious dietary concerns, Lloyd did not designate any other request form as a "grievance" in accordance with jail policy.  *County Defendant's Discovery Response Exhibit D (Doc. No. 32-2)* at 32 ("Request forms may be used for GRIEVANCE FORMS by writing GRIEVANCE FORM at the top of the form.").  Even assuming the request forms submitted by Lloyd constituted grievance forms, Lloyd did not appeal any of the responses provided to his requests as allowed by the grievance procedure in effect at the Elmore County Jail.

## B.  Absolute Immunity

To the extent Lloyd sues the defendants in their official capacities, they are immune from monetary damages.[4]  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,

---

[4] Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails."  *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C.  Claims Against Troy King - Respondeat Superior

The Attorney General of the State of Alabama is not responsible for the conditions of confinement at any county jail and has no authority over those officials responsible for a county jail.  Thus, the claims lodged against defendant King regarding conditions at the Elmore County Jail provide no basis for relief.  To the extent Lloyd seeks relief from defendant King with respect to the constitutionality of his imprisonment/extradition based on the New York warrants and waiver of extradition, assuming *arguendo* King exerted some authority over those persons responsible for these actions, the law is well settled "that

Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability] . . . . *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').   Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).   "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S at 677.   Thus, defendant King is liable to

Lloyd only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

It is undisputed that Troy King did not personally participate in the actions about which the plaintiff complains. Based on the foregoing, defendant King may be held liable in this § 1983 action only if his actions bear a causal relationship to the purported violation of Lloyd's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of this defendant, Lloyd must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in [the violation of] constitutional rights, or . . . facts [that] support an inference that [King] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates Lloyd has failed to meet this burden as the record is devoid of evidence regarding any causal relationship between actions of defendant King and the claims made the basis of this complaint. Summary judgment is therefore due to be granted in favor of

defendant King.[5]

## D.  Failure to Exhaust Administrative Remedies

In response to the complaint, the county defendants maintain this case is subject to dismissal because Lloyd failed to properly exhaust the administrative remedies provided under the grievance procedure adopted by the Elmore County Jail prior to filing his complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the

---

[5] In addition, as determined herein, *infra* at 24-28, Lloyd's challenges to his confinement and extradition fail to establish a violation of his constitutional rights.

exhaustion requirement.  *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***."  *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . . .  Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.  The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

It is undisputed that the Elmore County Jail provides a grievance procedure for inmate complaints.  *County Defendants' Discovery Response Exhibit D (Doc. No. 32-2)* at 42-45;

*County Defendants' Exhibit A (Affidavit of Jail Administrator Jeff Fox - Court Doc. No. 23-*

*1)* at 3-4.  The relevant portion of the grievance procedure reads as follows:

> It is the policy of the Elmore Count Jail that all inmates have the individual ability to bring complaints, concerns, and other issues to the attention of the jail staff.  An inmate with a complaint, concern, or other issue regarding any aspect of his or her incarceration is encouraged and expected to bring the matter to the attention of the jail staff.  All members of the jail staff receiving grievances are charged with handling them in the manner set forth in the grievance procedure.  An inmate filing a grievance or appealing a grievance will not be retaliated against for filing a grievance.

> * * *

> ...  An inmate with a grievance may request a grievance form . . . from any member of the jail staff.  The staff member shall provide [a] copy of the grievance form to the inmate and take it back from the inmate after a reasonable amount of time has elapsed for the inmate to complete the form.  Grievances may be filed on a request form.  All grievances must be filed within fourteen days ... of the incident complained of.

> The staff member receiving the grievance will evaluate the grievance to determine whether it can be handled at his or her level.  If so, the receiving staff member will take the necessary action.  The receiving staff member will inform both his immediate supervisor and the inmate of the action taken.  The receiving staff member will document on the grievance form the action take[n] and the date and time the inmate was informed of the action taken, if any.  Additionally, the receiving staff member will sign the grievance form, date, and place the completed copy in the inmate's jail file.

> If the receiving staff member is unable to address the inmate's concern, the grievance is to be elevated to the next person in the chain of command [until the grievance reaches an appropriate staff member]. . . .  [T]he jail staff [member] with the authority to address the inmate's issue . . . will handle it in the manner described in [the above paragraph].

> Where a grievance is of an emergency nature, it may be made orally to any staff member.  A grievance is an "emergency" when the subject of the

grievance, if left un-addressed, has a strong likelihood of resulting in a breach of security, serious physical harm to any person; and/or serious harm to the health of any person . . . .  As with a written grievance, the staff member receiving an[] emergency oral grievance will attempt to address the problem at his or her level.  If the staff member cannot address the oral grievance, he or she shall elevate the grievance to the next person in the chain of command until it reaches a staff member with the appropriate authority to address the grievance.  Once the grievance is addressed, the staff member making the final decision shall [document all relevant information regarding the submission and disposition of the grievance] in the inmate's file . . . .

\* \* \*

If an inmate is unsatisfied with the response to his written or oral grievance, he or she may appeal the decision as follows:

a.  **Grievance responded to by any member of the jail staff other than the jail administrator**.  The inmate must, within 24 hours [of receiving the response to his grievance], submit a written appeal to the jail administrator on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, and the action the inmate wishes the jail administrator to take.  Upon receipt of an appeal, the jail administrator shall determine whether the appeal has merit and take the action, if any, which is appropriate.  Regardless of the decision, the jail administrator shall inform the inmate of the decision.  The jail administrator shall document in the inmate's jail file the appeal decision along with the date and time the inmate was notified [of the decision].  The jail administrator will sign this document.  If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision [of the jail administrator] in writing to the Chief Deputy as set forth in the next paragraph.

b.  **Grievance responded to by the jail administrator or appeal of an appeal to the jail administrator**.  The inmate must, within 24 hours of the jail administrator's decision, submit a written appeal to the Chief Deputy on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff and/or jail administrator, and the action the inmate wishes the Chief Deputy

18

to take.  Upon receipt of an appeal, the Chief Deputy shall determine whether the appeal has merit and take the action, if any, which is appropriate.  Regardless of the decision, the Chief Deputy shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff delegated to inform the inmate of the Chief Deputy's decision.  A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified.  The Chief Deputy will sign this document.  If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Sheriff as set forth in the next paragraph.

c. **Appeal to the Sheriff**.  The final appeal of a grievance is [to] the Sheriff.  The inmate must within 24 hours of a decision by the Chief Deputy, submit a written appeal to the Sheriff on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, Jail Administrator, and/or Chief Deputy and the action the inmate wishes the Sheriff to take.  Upon receipt of an appeal, the Sheriff shall determine whether the appal has merit and take the action, if any, which is appropriate.  Regardless of the decision, the Sheriff shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff delegated to inform the inmate of the Sheriff's decision.  A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified.  The Sheriff or his designated representative will sign this document.

D.  **Delegation of appeal authority**.  The Sheriff, at his discretion, may designate any member of the Sheriff's Department that has not already made a decision regarding the inmate's grievance to act in lieu of the persons designated in the [foregoing] paragraphs . . . .

*County Defendants' Discovery Response Exhibit D (Doc. No. 32-2)* at 42-45.

On December 1, 2009, the court entered an order allowing Lloyd the opportunity to

respond to the exhaustion argument. *Doc. No. 24*. In his response to this order, Lloyd argues the grievances he filed should constitute exhaustion of the grievance procedure. *Plaintiff's January 10, 2010 Response (Doc. No. 33)* at 3. He also references "several letters" written to jail officials addressing the validity of his imprisonment based on the warrants issued by New York authorities. *Id*. Lloyd, however, does not dispute his failure to appeal the responses provided to his grievances/requests. Lloyd's argument that full and proper exhaustion is not required prior to a prisoner filing a federal civil action is foreclosed by *Ngo*. The court therefore concludes that the claims presented in this cause of action are subject to dismissal as Lloyd failed to properly exhaust the administrative remedies available to him which is a precondition to proceeding in this court on his claims. *Ngo*, 548 U.S. at 87-94, 126 S.Ct. at 2384-88.

It is undisputed that Lloyd failed to appeal the responses provided to his grievances/requests pursuant to the grievance procedure in effect at the Elmore County Jail. The time to submit each respective appeal expired prior to Lloyd initiating this cause of action. Thus, the administrative remedy provided by the defendants regarding the instant claims is no longer available to Lloyd. Under such circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining

20

access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice " where previously available administrative remedies had become unavailable and no circumstances justified the failure to exhaust).  The defendants are therefore entitled to summary judgment due to Lloyd's failure to properly exhaust administrative remedies previously available to him at the Elmore County Jail.

### E.  Claims for Relief

Even had Lloyd exhausted the available administrative remedies, he remains entitled to no relief as the record establishes Lloyd's religious claims are moot whereas his claims challenging the constitutionality of his confinement in the Elmore County Jail and subsequent extradition are without merit.

1. <u>Religious Accomodations</u>.  Lloyd seeks only injunctive relief with respect to his claims attacking the failure to provide a pork-free diet and access to an Islamic chaplain. *Complaint (Doc. No. 1)* at 5.  Lloyd is no longer incarcerated at the Elmore County Jail.[6]  In addition, the Elmore County Jail has always permitted inmates access to clergy of their choice and in February of 2009 adopted a pork-free diet for all inamtes.

Courts do not sit to render advisory opinions.  *North Carolina v. Rice*, 404 U. S. 244,

---

[6] A thorough review of the relevant website for the New York Department of Corrections, http://www.nysdoccslookup.doccs.ny.gov/, indicates Lloyd is currently incarcerated within its custody on a life sentence imposed for second degree murder.  The earliest release date for which Lloyd is eligible is November 30, 2026.

246 (1971).  An actual controversy must exist at all times when the case is pending.  *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974).  In cases where the only relief requested is injunctive in nature, it is possible for events subsequent to the filing of the complaint to make the matter moot.  *National Black Police Assoc. v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (change in statute); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner); *Tawwab v. Metz* 554 F.2d 22, 23 (2d Cir. 1977) (change in policy).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome.  *Weinstein v. Bradford*, 423 U.S. 147 (1975);  *Flast v. Cohen,* 392 U.S. 83, 95 (1968) ("Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented.").  Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies."  Federal courts are not permitted to rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before the court.  *Lewis v. Continental Bank Corp.*, 494 US. 472, 477 (1990).

In *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987), the Eleventh Circuit Court of Appeals determined:

> A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the litigation, such as where there is no reasonable expectation that the violation will occur again or where interim relief or events have eradicated the effects of the alleged violation.

(citations omitted);  *see also Darring v. Kincheloe,* 783 F.2d 874, 876-77 (9th Cir. 1986) (after an inmate is transferred, there is neither a "reasonable expectation" nor a "demonstrated probability" that the inmate will return to the prison against which he sought injunctive relief and therefore claim for injunctive relief is moot).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . ." *Id.*

Lloyd is not confined at the Elmore County Jail and, therefore, is no longer subject to the actions about which he complains.  Consequently, his request for injunctive relief is subject to dismissal as moot.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Murphy v. Hunt,* 455 U.S. 478, 481-82 (1982); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury); *McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984).

2.  <u>Confinement and Extradition</u>.  Lloyd challenges the constitutionality of his temporary imprisonment at the Elmore County Jail on a parole violation warrant/detainer and an arrest warrant issued by New York authorities.  Lloyd also complains his extradition to New York violated his constitutional right to due process and the right to a signed Governor's warrant in accordance with the provisions of the Uniform Criminal Extradition

Act as adopted and codified by the State of Alabama.[7]  Lloyd maintains his "extradition is the core of this complaint."  *Plaintiff's January 10, 2010 Response (Doc. No. 33)* at 5.

Lloyd's confinement in the Elmore County Jail was based on a parole violation warrant/detainer lodged against Lloyd by the New York Board of Parole on January 22, 1991 for his violation of parole on murder and robbery convictions from that state, *County Defendants' Exhibit D (Doc. No. 23-4)* at 8, and a warrant of arrest for second degree murder issued by the Criminal Court of the City of New York on February 21, 1992.  *Id*. at 12-14. At the time of Lloyd's confinement in the Elmore County Jail, each of these warrants remained legally binding.[8]  New York law enforcement officials obtained custody of Lloyd on December 3, 2008 and extradited him to New York pursuant to his knowing and voluntary waiver of extradition executed by Lloyd as a condition of parole by the State of New York, a waiver that remained in full force and effect at the time of Lloyd's violation of parole thereby providing a basis for extradition upon his location by New York authorities.  Since Lloyd violated the conditions of his parole prior to the expiration of his parole term, the New York Parole Board did not discharge Lloyd from parole.  Consequently, the wavier of extradition had not expired at the time Lloyd violated his parole and such waiver therefore remained effective until New York officials sought Lloyd's extradition.

Lloyd waived all extradition rights and procedures as a condition of his parole by the

---

[7] This Act is codified at *Ala. Code* § 15-9-1 *et seq*.

[8] The court notes there is no evidence that either of these documents has ever been invalidated.

New York Board of Parole in June of 1990, a condition to which he remained obligated at the time of his return to New York on December 3, 2008 because New York authorities issued valid warrants and a detainer against him for his violation of parole during the pendency of his parole term. *County Defendants' Exhibit D (Doc. No. 23-4)* at 9 ¶10 ("In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union and from any territory or country outside the United States. This waiver shall be in full force and effect until I am discharged from Parole. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition of my Parole . . . ."). Lloyd consented to the waiver of extradition as a condition of parole, the term of which did not expire until, at the earliest, October 20, 1996, and acknowledged his understanding of this waiver. *Id.* Lloyd does not challenge the validity of his extradition waiver and it is well settled that conditioning of parole on the execution of an extradition waiver is not per se coercion. *Forester v. California Adult Authority,* 510 F.2d 58, 61 (8th Cir. 1975); *Pierson v. Grant,* 527 F.2d 161, 164 (8th Cir. 1975) ("[P]arole is an act of grace and . . . boards of parole have wide discretion to impose reasonable conditions in connection with parole."). Instead, Lloyd maintains the waiver had expired at the time of his extradition to New York in 2008. The warrants and detainer on which the extradition was based had been executed against Lloyd prior to the expiration of his parole term and related to

violations of parole conditions that occurred while Lloyd was on parole.  Thus, as previously

determined, the waiver of extradition remained in full force and effect at the time of Lloyd's

extradition to New York.

Lloyd waived any extradition rights as a condition of his parole.  Since Lloyd "had

previously signed a waiver of extradition as a condition of parole, he had neither a

constitutional nor a statutory right to specific extradition procedures." *Scull v. New Mexico*,

236 F.3d 588, 596 (10th Cir. 2000); *Dababnah v. Keller-Burnside*, 208 F.3d 467, 472 (4th

Cir. 2000) (challenge to extradition in § 1983 action provides no basis for relief where

plaintiff signed waiver of extradition and consent to return to state); *Hinton v. Moritz*, 11 F.

Supp. 2d 272 (W.D.N.Y. 1998) (petitioner not entitled to relief under § 1983 on claim that

he was extradited in violation of his due process rights and Uniform Criminal Extradition Act

where petitioner executed waiver of extradition as condition of his parole); *Wysinger v.*

*White,* 1997 WL 94261, at *2-3 (D.Kan. 1997) (plaintiff relinquished his right to formal

extradition proceedings and any constitutional claim based upon the lack of such proceedings

when he executed a pre-parole waiver of extradition); *Wrenn v. California State Parole*, 1992

WL 112276, at *1 (D.Kan. 1992) (execution of signed waiver of extradition as a condition

of  parole "waive[s] any constitutional rights implicated by a return for parole violation

without formal extradition proceedings."); *Bradley v. Extradition Corp. of America*, 758 F.

Supp. 1153, 1157 (W.D. La. 1991), *citing Crumley v. Snead,* 620 F.2d 481, 483 (5th Cir.

1980) and *Siegel v. Edwards,* 566 F.2d 958, 960 (5th Cir. 1979) ("Where the fugitive

knowingly waives any rights he may have that are inherent in the extradition process he may not recover under section 1983 where those rights are deprived . . . .  The rationale for this rule is that the extradition is based on the waiver, rather than the formal extradition process."); *Feathers v. Detrick*, 175 W.Va. 628, 336 S.E.2d 922 (W.Va. 1985) (Uniform Criminal Extradition Act requires no judicial determination by demanding state of probable cause to authorize extradition of parole violator from asylum state); *Ex parte Johnson,* 610 S.W.2d 757 (Tex. Cr. App. 1981) (formal extradition proceedings not necessary to return parole absconder who signed waiver of extradition as a condition of parole); *Pierson v. Grant*, 527 F.2d 161 (8th Cir. 1975) (failure to follow extradition procedures in the Uniform Criminal Extradition Act did not subject defendants to liability when plaintiff had signed a pre-release waiver of extradition).  In light of the foregoing, the court concludes that Lloyd's claims challenging his confinement and extradition provide no basis for relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED;

2.  This case be dismissed with prejudice; and

3.  Judgment be GRANTED in favor of the defendants.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 6, 2012**.  Any objections filed must specifically

27

identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 23rd day of July, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE